```
                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ALABAMA
                        NORTHEASTERN DIVISION
```

```
JEAN M KING,                    )
                                )
     PLAINTIFF,                 )
                                )
v.                              )         CV98-H-1583-NE
                                )
ELECTRONIC DATA SYSTEMS         )
CORPORATION, a Delaware         )
Corporation,                    )
                                )
     DEFENDANT.                 )
```

FILED
99 OCT 12 AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
OCT 12 1999

## MEMORANDUM OF DECISION

The Court has before it the June 21, 1999 motion of defendant Electronic Data Systems Corporation ("EDS") for summary judgment. Pursuant to the Court's June 22, 1999 order, the motion was deemed submitted, without oral argument, on July 20, 1999.

### I. Procedural History

Plaintiff Jean M. King commenced this action on June 19, 1999 by filing a complaint alleging that plaintiff had been terminated from her employment by defendant in violation of the Age Discrimination in Employment Act ("ADEA"). Plaintiff specifically contends that, because of plaintiff's age, defendant terminated her employment and replaced plaintiff with a younger, less-qualified worker. (See Compl. ¶¶ 12-14.) Defendant's June 21, 1999 motion for summary judgment asserts that plaintiff has failed to set forth evidence sufficient to support the finding of discriminatory intent necessary for plaintiff to prevail. (See Mot. Summ. J. ¶ 1.) On June 29, 1999 defendant filed evidentiary

51

submissions[1] under seal in support of the motion for summary judgment, and on July 6, 1999 defendant filed a supporting brief. Plaintiff filed evidentiary submissions[2] in opposition to the motion on July 13, 1999 and filed a brief in opposition on July 20, 1999. On September 2, 1999, defendant filed a supplemental brief.[3]

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[1] Defendant submitted the June 9, 1999 deposition of plaintiff Jean M. King, the May 18, 1998 deposition of defendant's representative Sherri Milton, the June 9, 1999 deposition of defendant's representative William Brown, the June 28, 1999 declaration of William Brown, the June 28, 1999 declaration of Joyce Alton, and defendant's responses to plaintiff's first interrogatories, as well as various confidential EDS documents (Def.'s Exs. 4-14).

[2] Plaintiff also submitted the June 9, 1999 deposition of plaintiff Jean M. King, the May 18, 1998 deposition of defendant's representative Sherri Milton, and the June 9, 1999 deposition of defendant's representative William Brown. In addition, plaintiff submitted plaintiff's response to defendant's interrogatories (Ex. 1 to June 9, 1999 Dep. of Jean M. King), exhibits to the May 18, 1998 deposition of Sherri Milton, exhibits to the June 9, 1999 deposition of William Brown, the July 13, 1999 affidavit of Beverly Corum, the August 13, 1999 affidavit of Beverly Corum amending the July 13, 1999 affidavit, and confidential EDS documents concerning Naomi Nelson (Pl.'s Ex. 5).

[3] Defendant's September 2, 1999 supplemental brief also contained a motion to strike the July 13, 1999 affidavit of Beverly Corum offered by plaintiff. In light of the Court's decision regarding defendant's motion for summary judgment, the motion to strike need not be considered.

as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the

moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. <u>Fitzpatrick</u>, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the

4

movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

Plaintiff began working as a temporary employee at the General Motors ("GM") Saginaw facility in the Decatur, Alabama area in 1980 and was hired by GM as a full-time employee in 1981. (See Dep. of Jean M. King 11-12.)  In 1985, plaintiff became an employee of EDS following GM's purchase of EDS.[4]  (See Dep. of Jean M. King 15; Dep. of William Brown 10.)  Plaintiff remained at the Saginaw facility and continued to have the same job responsibilities.  (See Dep. of Jean M. King 15.)

In 1997, EDS began a business restructuring that included a reduction in force.  (See Dep. of Sherri Milton 21-22; EDS 0903.) As part of the 1997 restructuring and reduction in force, approximately 900 EDS employees were terminated and another 300 to 500 were reassigned within the corporation.  (See Dep. of

---

[4] EDS became an independent corporation again in 1995. (See Dep. of William Brown 10.)

5

Sherri Milton 49-50.)  Plaintiff was one of the employees terminated.

Plaintiff was terminated on August 19, 1997 at the age of 55.  (See Compl. ¶ 9.)  At the time of her termination, plaintiff was classified as a computer operator.  (See Compl. ¶¶ 3, 12.) When terminated, plaintiff's primary job responsibility was the printing and distributing of reports; plaintiff also collected and forwarded key punch cards, monitored the timekeeping system, and printed payroll checks, but those functions were not listed on the job description which plaintiff wrote in 1997.  (See Dep. of Jean M. King 48-49; EDS 0586.)

The decision to terminate plaintiff was made by William Brown, who became an EDS manager for the Saginaw facility in 1996.[5]  (See Dep. of William Brown 58, 162-80.)  Brown was an off-site manager and met plaintiff approximately five times during his tenure as manager of the Saginaw facility.  (See Dep. of William Brown 58, 66-72; Dep. of Jean M. King 176.)  In May of 1997, upon learning of the possibility that one employee at the Saginaw facility might be terminated as part of the reduction in force, Brown identified plaintiff as the employee to be terminated if necessary.  (See Dep. of William Brown 162-63, 176-78; EDS 0512.)  At that time, Brown also decided that an existing EDS employee, Naomi Nelson, could assume King's job functions. (See EDS 0512; Dep. of William Brown 140.)  In July of 1997,

---

[5] Brown is still a manager with EDS, but is no longer responsible for the Saginaw facility.  (See Dep. of William Brown 12-14.)

after being informed that he would need to terminate one Saginaw employee, Brown again identified plaintiff as that employee and again determined that Nelson would assume plaintiff's job functions. (See Dep. of William Brown 177.) Nelson is younger than plaintiff. (See Compl. ¶ 12; July 13, 1999 Aff. of Beverly Corum ¶ 4; Dep. of Jean M. King 109.)

Following her termination, plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (See Compl. ¶ 6.) On March 31, 1991, the EEOC granted plaintiff a right to sue letter. (See Compl. ¶ 7.) Plaintiff then filed her June 19, 1998 complaint with this Court.

### IV. Applicable Substantive Law and Analysis

As previously noted, plaintiff's complaint alleges that her termination during the defendant's 1997 reduction in force was motivated by age and, therefore, was in violation of the ADEA. Defendant's motion for summary judgment asserts that plaintiff cannot establish the element of discriminatory intent necessary to support plaintiff's claim against defendant. In considering defendant's motion for summary judgment, plaintiff's claim will be examined according to the framework that the Eleventh Circuit has established for reduction in force cases under the ADEA.

The courts of this circuit employ a three-part analysis for summary judgment motions by defendants in ADEA reduction in force cases. First the plaintiff must establish a prima facie case of age discrimination. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). The prima facie elements in a

reduction in force case are (1) evidence that the plaintiff was within the protected class and was affected by an adverse employment decision, (2) evidence that the plaintiff was qualified for plaintiff's current position or another position within the organization, and (3) evidence sufficient for a fact finder to conclude that the employer intentionally discriminated against plaintiff based on age. See Maddow v. Procter & Gamble Co., Inc., 107 F.3d 846, 851 (11th Cir. 1997). See also Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1329 (11th Cir. 1998); Jameson v. Arrow Co., 75 F.3d 1528, 1531-32 (11th Cir. 1996). After the plaintiff has established a prima facie case, the burden shifts to the defendant to "rebut the inference of discrimination by providing legitimate, non-discriminatory reasons for its decision." Maddow, 107 F.3d at 851. See also Tidwell v. Carter Prods., 135 F.3d 1422, 1426 (11th Cir. 1998); Earley, 907 F.2d at 1081. If the employer offers non-discriminatory reasons for the plaintiff's termination, the burden shifts back to the plaintiff to raise a genuine factual issue that the employer's proffered non-discriminatory reasons are merely pretext. See Maddow, 107 F.3d at 851. See also Tidwell, 135 F.3d at 1426; Earley, 907 F.2d at 1081. The Court now turns to this three-part analysis.

   The Court must first consider whether plaintiff has established a prima facie ADEA violation. For the purposes of its motion for summary judgment, defendant assumes that plaintiff can satisfy the first two elements of her prima facie case--that

plaintiff was within the protected class and suffered an adverse employment action and that plaintiff was qualified for her position. (See Def.'s Br. 13.) Therefore, the Court need merely determine whether plaintiff has put forth evidence sufficient for a fact finder to conclude that defendant intentionally discriminated against plaintiff on the basis of age. The Court finds that plaintiff's evidence that a younger employee with less experience assumed plaintiff's job functions almost immediately upon plaintiff's termination is sufficient evidence to allow a reasonable fact finder to reach a conclusion of intentional age discrimination. See Tidwell, 135 F.3d at 1426 (finding that evidence that plaintiff's sales accounts were assumed by a younger, less experienced manager was sufficient to establish a prima facie ADEA violation). Plaintiff has established her prima facie case.

Because plaintiff has met the requirements for a prima facie case of age discrimination, defendant must now come forward with evidence of legitimate, non-discriminatory reasons for plaintiff's termination to rebut the claim of discrimination. See Maddow, 107 F.3d at 851; Earley, 907 F.2d at 1081. Defendant asserts that plaintiff's termination was part of a reduction in force undertaken as one element of a general corporate restructuring. (See Def.'s Br. 1-2.) Defendant further asserts that discrimination did not motivate plaintiff's termination. (See Def.'s Br. 2.)

Defendant offers a number of legitimate factors influencing

the decision to terminate defendant and reassign plaintiff's duties to Nelson. At the time of the termination, defendant was engaged in a reduction in force as one element of a restructuring designed, in part, to increase shareholder-value and reduce costs. (See Dep of Sherri Milton 21-22; Dep. of William Brown 127, 134; EDS 0903.) In deciding which employee to terminate, plaintiff's manager, William Brown, considered employee rankings based on job title functions, the level of service for which the customer would pay, whether the employee was fee-for-service, what skill sets individual employees possessed, and the impact of termination on ability to service the customer. (See Dep. of William Brown 136-39.) Plaintiff was not a fee-for-service employee, thus making plaintiff less valuable to defendant. (See Dep. of William Brown 134, 139-40; July 13, 1999 Aff. of Beverly Corum ¶ 8.) Of the employees at the Saginaw facility considered for termination, defendant objectively had the most limited skill set as reflected in the job description completed by plaintiff. (Compare EDS 0586 with EDS 0587-88 and EDS 0589 and EDS 0590.) Plaintiff had little contact with the customer and was not viewed as being part of the employee group. (See EDS 0586; EDS 0634.) Additionally, Brown, the decision-maker, believed that plaintiff was not interested in broadening her skill set or changing her work schedule. (See Dep. of William Brown 165.) The decision-maker also believed that Nelson, who possessed skills that plaintiff lacked, would be needed to help transition certain service back to EDS's client (GM). (See Dep. of William Brown

10

139-40.) Finally, Nelson represented to Brown that she had previously held the same position as plaintiff and possessed the skills necessary for the computer operator position held by plaintiff.[6] (See Dep. of William Brown 97,122, 161; EDS 0587-88.) The Court finds that defendant's evidence establishes the legitimacy of the reduction in force and also establishes several non-discriminatory reasons for plaintiff's termination and for the assumption of plaintiff's former job functions by Nelson. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998) (employer's assessment that employee was less valuable to employer than other workers legitimate reason for termination).

Plaintiff attempts to raise a genuine issue of material fact

---

[6] The record is somewhat unclear as to when Brown first learned part of the information indicating that Nelson possessed the skill set needed for the computer operator position; however, any lack of clarity relates to knowledge of skills which would not affect Brown's decision or the Court's analysis. At one point, Brown stated, that following plaintiff's termination, he spoke with Nelson concerning her transition to the plaintiff's former position, and Nelson indicated that she would need minimal training because of her prior experience as a computer operator. (See Dep. of William Brown 97.) But the record also shows that this was not the first time that Brown learned of Nelson's past, relevant experience. Nelson's job description listed prior experience as an operator and in the print center and other passages from Brown's deposition indicate that Brown was at least partially aware of Nelson's experience as a computer operator prior to the meeting concerning Nelson's transition. (See EDS 0587-88; Dep. of William Brown 122, 161.) In particular, Brown was aware of Nelson's experience in the print center at the time he ranked the employees, well before plaintiff's termination. (See Dep. of William Brown 161.) Whether Brown also knew of Nelson's claimed data entry skills at that time is immaterial because, as discussed below, Brown believed that plaintiff had been unable to learn data entry. (See Dep. of William Brown 81-82.)

11

as to defendant's legitimate reasons for plaintiff's termination, claiming that the proffered reasons are simply pretext for age discrimination; plaintiff's evidence consists of alleged inconsistencies in defendant's reasons for termination, the July 13, 199 affidavit of Beverly Corum, and plaintiff's own subjective beliefs regarding her termination. (See Pl.'s Br. 7-10, 17-19.) The Court can make quick work of plaintiff's evidence concerning supposedly inconsistent explanations for her termination. In her brief, plaintiff argues that the various reasons provided for her termination are inconsistencies, which give rise to an inference of pretext. (See Pl.'s Br. 17-19.) Although truly inconsistent explanations for termination may be evidence of pretext, what plaintiff cites as inconsistencies evidencing pretext are nothing more than multiple legitimate, non-discriminatory factors, which are not necessarily inconsistent and which do not controvert defendant's evidence. See Tidwell v. Carter Prods., 135 F.3d 1422, 1428 (11th Cir. 1998) (finding that purportedly inconsistent explanations for termination were "at most" additional, legitimate reasons not giving rise to a genuine factual issue); Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1458-59 (11th Cir. 1997) (finding that employer's differing reasons for discharge were not necessarily inconsistent). That an employer used several factors in determining to discharge an employee as part of a reduction in force is not, standing alone, evidence of pretext.

   Plaintiff also offers the July 13, 1999 affidavit of Beverly

Corum as evidence of pretext. Although the Court notes certain problems with the July 13, 1999 Corum affidavit,[7] for the purposes of this motion, the Court accepts as true all averments contained in the July 13, 1999 affidavit and views all inferences arising from the affidavit in the light most favorable to the plaintiff. See Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996) ("On a motion for summary judgment, we must review the record, and all its inferences, in the light most favorable to the nonmoving party."). In her July 13, 1999 affidavit, as amended by her August 13, 1999 affidavit, Corum states that Nelson had to be trained to perform plaintiff's job functions, that Nelson no longer performed any of her former job duties, that a temporary employee had assumed Nelson's former job functions, that Nelson's former job functions were not needed to perform plaintiff's job functions, that Nelson had not been

---

[7] First, Corum is the plaintiff's niece by marriage. (See Dep. of Jean M. King 20.) Second, Corum's affidavit required amendment to correct a materially false statement. (See Aug. 13, 1999 Aff. of Beverly Corum ¶ 3.) Finally, although Corum's affidavit contains a general statement that the assertions therein are based upon personal knowledge, there are no specific recitals of the bases for such knowledge and some of the statements made would appear to be beyond the affiant's personal knowledge, given the affiant's position with defendant. (See July 13, 1999 Aff. of Beverly Corum ¶¶ 4, 8.) Without evidence of a sufficient basis for personal knowledge, such statements are inadmissible. See Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). However, as noted, for the purposes of this motion, the Court accepts the entire July 13, 1999 affidavit, as amended, as true. The Court cannot and will not decide the affiant's credibility. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (stating that trial judge is not to weigh the evidence on a motion for summary judgment).

needed to help transition any services back to the customer, and that Nelson was not liked by the customer. (See July 13, 1999 Aff. of Beverly Corum; Aug. 13, 1999 Aff. of Beverly Corum.) Even taken as true, the allegations contained in Beverly Corum's affidavits do not sufficiently call into question defendant's offered non-discriminatory reasons for plaintiff's termination because the affidavits refer to facts either not known to the decision-maker or occurring after the termination or not inconsistent with the defendant's stated legitimate reasons for plaintiff's termination and Nelson's reassignment.

Corum states that Nelson had to be trained to perform plaintiff's job functions and that Nelson never mastered the necessary skill set. (See July 13, 1999 Aff. of Beverly Corum ¶¶ 4-6, 9.) However, Nelson's job description indicated that Nelson had previously performed some of the functions associated with plaintiff's position as a computer operator and Nelson represented to William Brown, the decision-maker, that she possessed the basic skills for the position. (See Dep. of William Brown 97, 122, 161; EDS 0587-88.) Nelson had worked in the print center for one year and told Brown that she had performed data entry.[8] (See Dep. of William Brown 161.) That Nelson later proved unable to perform data entry proficiently does not indicate pretext because that information came to light only after the decision to terminate plaintiff and to re-assign Nelson had been made. Furthermore, even had Nelson's lack of

---

[8] See, supra, note 6.

14

skill in data entry been known prior to the making and implementing of the decision, such knowledge would still not indicate pretext because Brown also believed plaintiff incapable of performing data entry. (See Dep. of William Brown 81-82.).

Similarly, the remaining charges contained in Corum's July 13, 1999 affidavit, as amended by her August 13, 1999 affidavit, do not controvert defendant's stated legitimate reasons for plaintiff's termination such as to raise a genuine question of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (stating that summary judgment is proper if the evidence offered in opposition "is not significantly probative") (emphasis added). That Nelson no longer performed her former job functions and was not actually needed to assist in transitioning those tasks back to GM are irrelevant. Nelson was retained not to continue performing her former job functions on a daily basis but because the decision-maker believed that the skills that Nelson used in that position would be needed in transferring those services back to the customer.[9] (See Dep. of William Brown 139-40, 166-68.) That she would not actually be called upon to assist the customer could not have been known at the time the decision to terminate plaintiff and re-assign Nelson was made. Although the decision-maker, Brown, may have made an inaccurate

---

[9] Nelson apparently did retain some of her former job functions (See Dep. of William Brown 166-68.), but for the purposes of the current discussion, the Court accepts the statement contained in Beverly Corum's July 13, 1999 affidavit that Nelson did not perform any of her former job responsibilities.

15

forecast of Nelson's future usefulness, the Court's job is not to second guess the decision-maker's honest business judgements. See Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997). See also Elrod v. Sears, Roebuck & Co., 939, 1470 (11th Cir. 1991) (stating that the employer need not be correct in its assessments of employees so long as it believes that assessment). As the Eleventh Circuit stated in Combs, "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer." See Combs, 106 F.3d at 1543. See also, Elrod 939 F.2d at 1470 (11th Cir. 1991) (stating that the courts do not re-examine business decisions but rather look to whether the reasons given are the true explanation for the employer's actions.)

    Other than the purportedly inconsistent reasons given for plaintiff's termination and the inferences to be drawn from Beverly Corum's amended July 13, 1999 affidavit, plaintiff has only her personal evaluation of the reasons for her termination available to rebut defendant. During her deposition, plaintiff stated that, apart from plaintiff's age and length of service and the fact that Nelson assumed some of plaintiff's former job responsibilities, plaintiff has no evidence of discriminatory intent and would not otherwise have thought that her termination was motivated by age. (See Dep. of Jean M. King 85, 109.) However, once the defendant has presented legitimate, non-

discriminatory reasons for its actions, the plaintiff's own subjective belief and allegation of discrimination, although sincerely held, cannot establish a genuine issue of material fact such as to avoid a defendant's motion for summary judgment. See Young v. General Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988). In cases such as this, "[w]here the defendant's justification evidence completely overwhelms any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir. 1987).

In summary, the Court finds that no material issues of fact remain and that defendant Electronic Data Systems Corporation is entitled to judgment as a matter of law as to all claims asserted by plaintiff. A separate order will be entered.

DONE this 12th day of October, 1999.

SENIOR UNITED STATES DISTRICT JUDGE